UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                       :

SPIRIT REALTY CAPITAL, INC.,            :

                     Plaintiff,        :

                                         :          21-CV-2261 (JMF)

       -v-                     :

                                       :       OPINION AND ORDER

WESTPORT INSURANCE CORPORATION,    :

                    Defendant.    :

                                         :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case is the latest in an ever-increasing line of insurance coverage disputes arising out of the COVID-19 pandemic.  Plaintiff Spirit Realty Capital, Inc. ("Spirit"), a real estate investment trust, brings claims against Defendant Westport Insurance Corporation ("Westport"), challenging the latter's denial of coverage for lost rental income and other losses during the pandemic.  Westport now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Spirit's Complaint, arguing, among other things, that Spirit's losses are not covered because COVID-19 did not cause "physical loss or damage" to any of the insured properties.  For the reasons that follow, the Court agrees and therefore grants Westport's motion.

## BACKGROUND

      Spirit is a real estate investment trust that holds ownership interests in approximately 2,000 commercial properties throughout the United States.  ECF No. 1 ("Compl."), ¶ 14.  It leases or rents its properties to commercial tenants, which include restaurants, movie theaters, convenience stores, gyms, supermarkets, and the like.  *Id.* ¶¶ 14-15.  During the COVID-19 pandemic, many of Spirit's properties were subject to state and local government orders requiring businesses to close to the public or otherwise alter their operations.  *Id.* ¶¶ 25-35.  As a

result, many tenants were unable to pay rent, causing Spirit to lose in excess of $11 million in rental income alone.  *Id.* ¶¶ 50-51.  Spirit alleges that many of its properties "have documented the confirmed presence of COVID-19," *id.* ¶ 45, and that "Spirit's own employees who work at its headquarters . . . have also contracted COVID-19 during the pandemic," *id.* ¶ 46.

Spirit held an "all-risks" insurance policy from Westport (the "Policy"), which included coverage for the properties in which Spirit holds an ownership interest.  *Id.* ¶ 52.  To the extent relevant here, the Policy "insures all risks of direct physical loss or damage to insured property while on insured location(s)."  ECF No. 1-1 ("Policy"), at 10; *see also id.* at 39, 44 (providing "Time Element" coverage for lost profits "directly resulting from direct physical loss or damage insured" by the Policy, including loss of rental income if rental properties suffer "physical loss or damage").[1]  The Policy also contains "Communicable Disease" provisions, which provide coverage for certain costs (lost profits, "cleanup," and "reputation management") "[i]f an insured location . . . has the actual and not suspected presence of a communicable disease and access to the insured location is limited, restricted, or prohibited by . . . an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease."  Policy 28, 47.  The Policy does not, however, insure against "delay or loss of market" or "interruption of business," *id.* at 53, and it contains certain exclusions, including, as relevant here, for "[l]oss or damage due to the discharge, dispersal, seepage, migration, release or escape of contaminants," *id.* at 54, including "virus[es]," *id.* at 69; and loss or damage that consists of "mold, mildew, fungus, spores or other microorganism of any type," *id.* at 54.

---

[1]     References to page numbers in the Policy are to the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

Spirit filed a claim for losses during the pandemic, which Westport denied in full. Compl. ¶¶ 86, 89. This litigation — alleging a claim for breach of contract and seeking a declaratory judgment that Spirit's losses are covered under the Policy, *id.* ¶¶ 94-107 — followed.

## LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In reviewing a Rule 12(b)(6) motion, a court is limited to "a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). In particular, a court may consider only: (1) "the factual allegations in the . . . complaint, which are accepted as true"; (2) "documents attached to the complaint as an exhibit or incorporated in it by reference"; (3) "matters of which judicial notice may be taken"; and (4) "documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (per curiam) (cleaned up).[2] To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[3]

---

[2]    Spirit argues that the Court may not consider the Declarations of Mark L. Deckman and Stacy Barkdull, ECF Nos. 19, 20, 28, filed by Westport in support of its motion. *See* ECF Nos. 25, 29. Westport disagrees. *See* ECF No. 27 at 1, ECF No. 30. The Court may, of course, consider the unpublished decisions of other courts. As to the other exhibits Westport submits, the Court need not, and does not, consider them in deciding this motion.

[3]    Spirit erroneously asserts that a motion to dismiss must be denied unless "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Pl.'s Mem. 8 (citing *Glob. Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). That pleading standard, which comes from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)*,* was

**DISCUSSION**

Policy exclusions aside, whether Spirit's claims are covered turns on two questions:

(1) whether the claims are for "direct physical loss or damage to Insured Property" and (2)

whether the claims fall within the scope of the Policy's Communicable Disease provisions.  For

the reasons that follow, the Court concludes that the answer to both questions is no.

**A.  Direct Physical Loss or Damage**

First, Spirit fails to plausibly allege that the presence of COVID-19 virus in the air and on

surfaces constitutes "direct physical loss or damage to Insured Property" within the meaning of

the Policy, as necessary to trigger coverage by Westport.  *See* ECF No. 18 ("Def.'s Mem."), at

13 (emphasis omitted).  Spirit concedes, as it must, that "the term 'physical loss or damage' does

require some form of 'actual physical damage to the insured premises.'"  Pl.'s Mem. 11; *see,*

*e.g.*, *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 7 (2002) (holding that coverage

for "direct physical loss or damage" does not include mere "loss of use"); *see also Newman*

*Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014)

(under New York law "'direct physical loss or damage' . . . unambiguously[] requires some form

of actual, physical damage to the insured premises").[4]  Relying on cases holding that "physical

loss or damage" can occur when particulates or other microscopic matter are physically present

at a covered property, however, Spirit insists that the necessary "damage need not be structural

---

"retir[ed]" by *Twombly* and *Iqbal*.  *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d
247, 253 (2d Cir. 2014) (explaining that, "[c]ontrary to *Conley*'s 'no-set-of-facts' standard,
which requires only that a complaint not *preclude* the viability of claims, *Twombly* and *Iqbal*
require that a complaint *support* the viability of its claims by pleading sufficient nonconclusory
factual matter to set forth a claim that is plausible on its face").

[4]     The parties agree that New York law applies.  *See* Def.'s Mem. 13; Pl.'s Mem. 8 n.6; *see*
*also Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016).

or visible" to be covered.  Pl.'s Mem. 11 (citing *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 48 (2d Cir. 2006); *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002)).  And, it continues, the physical presence of COVID-19 at its insured properties suffices.

The Court is unpersuaded.  First, the overwhelming weight of precedent, both from lower New York courts and district courts in this Circuit, holds that COVID-19 does not qualify as "physical loss or damage."  *See, e.g.*, *6593 Weighlock Drive, LLC v. Springhill SMC Corp.*, 147 N.Y.S.3d 386, 393 (N.Y. Sup. Ct. 2021); *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 917 (N.Y. Sup. Ct. 2021); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, No. 20-CV-3350 (PGG) (RWL), 2021 WL 1034259, at *9 (S.D.N.Y. Mar. 18, 2021); *DeMoura. v. Cont'l Cas. Co.*, 523 F. Supp. 3d 314, 321-22 (E.D.N.Y. March 5, 2021); *Social Life Magazine v. Sentinel Ins. Co.*, No. 20-CV-3311 (VEC), 2020 WL 2904834 (S.D.N.Y. May 14, 2020).  The Second Circuit has not yet ruled on the issue, but several other Circuits have reached the same conclusion under the laws of other states.  *See Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1145 (8th Cir. 2021) (Iowa law); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) (per curiam) (Georgia law); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, — F. 4th —, No. 21-3068, 2021 WL 4304607, at *5 (6th Cir. Sept. 22, 2021) (Ohio law); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, — F. 4th —, No. 20-16858, 2021 WL 4486509, at *5 (9th Cir. Oct. 1, 2021) (California law).

Spirit argues that this avalanche of authority is distinguishable because it alleges the actual presence of COVID-19 on its properties via "infected droplets" and "fomites," not merely that its properties were rendered unusable by state and local government orders responding to the pandemic.  Pl.'s Mem. 12-16; *see also* Compl. ¶¶ 45-46 (alleging the confirmed presence of

COVID-19 at Spirit properties).  But in the cases on which Spirit relies, the particulates or other microscopic matter at issue caused alterations to the property that persisted over time.  *See Parks Real Est. Purchasing Grp.*, 472 F.3d at 36 (noting that "particulate matter" resulting from the collapse of the World Trade Center "penetrated the Building and settled in its mechanical and electrical systems" and caused damage); *Port Auth. of New York & New Jersey*, 311 F.3d at 232 ("When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner.").  Here, by contrast, there is no allegation that COVID-19 "penetrated" the property or rendered it "unhabitable"; Spirit merely alleges that the virus was present on surfaces in some of its properties temporarily.[5]  As Judge Rakoff has observed, "the coronavirus — unlike invisible fumes and chemicals — does not 'persist' and irreversibly alter the physical condition of a property."  *Northwell Health, Inc. v. Lexington Ins. Co.*, No. 21-CV-1104 (JSR), 2021 WL 3139991, at *6 (S.D.N.Y. July 26, 2021); *see also Social Life Magazine*, 2020 WL 2904834 ("[COVID-19] damages lungs. It doesn't damage printing presses."); *Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, No. 1:20-CV-1136, 2021 WL 1600831, at *4 (W.D.N.Y. Apr. 23, 2021) ("The building itself remains unharmed by the vi[ru]s and would be safe for occupancy except for the arrival of people who bring new sources of infection."); *100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am.*, No. 20-CV-8452 (JMF), 2021 WL 2333244, at *1 (S.D.N.Y. June 8, 2021) ("[W]hile the presence of COVID-19 may render property potentially harmful to people, it does not constitute harm *to* the property itself.").

---

[5]     Spirit contends that COVID-19 "fomites cannot always be eliminated by routine cleaning." Pl.'s Mem. 5 n.4.  But that allegation does not appear in Spirit's Complaint. Moreover, it is insufficient to show physical loss or damage absent an allegation that *Spirit*'s properties could not be disinfected through routine cleaning.  Spirit makes no such claim; instead, it alleges only that COVID-19 was present at its properties.  Compl. ¶¶ 44-51.

In short, the Court concludes that Spirit fails to allege "direct physical loss or damage to Insured Property" within the meaning of the Policy.

## B. Communicable Disease Coverage

Spirit attempts to salvage its claim by turning to the Communicable Disease provisions of its Policy, but that argument also fails.  As a threshold matter, Westport argues that the Communicable Disease provisions also require physical loss or damage, and Spirit does not appear to dispute that point.  *See* Def.'s Mem. 2, 4; Pl.'s Mem. 2-3.  That alone dooms Spirit's claim because, as discussed, it does not plausibly allege physical loss.  But even if that were not the case, the Communicable Disease provisions would be inapplicable because Spirit does not sufficiently allege that its properties had the "actual not suspected presence of Communicable Disease" *and* that access to such properties was "limited, restricted or prohibited by an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease."  Policy 28, 47.[6]

First, at most, Spirit adequately alleges the "actual, not suspected" presence of COVID-19 only as to the seven properties in New Mexico for which "the presence of COVID-19 has been confirmed."  Compl. ¶ 45.  Although Spirit also alleges that its "insured properties in other states have similarly experienced the confirmed presence of COVID-19," *id.* ¶ 46, that "Spirit's own employees who work at its headquarters . . . have also contracted COVID-19 during the pandemic," *id.*, and that "a tenant . . . filed a coverage action in Texas alleging that COVID-19 was present at most . . . of its locations," *id.* ¶ 49, these allegations are too conclusory to support its claim.  *See Iqbal*, 556 U.S. at 678 (holding that a complaint does not suffice "if it tenders

---

[6]      Coverage can also be triggered by "a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease," Policy 28, 47, but Spirit does not allege that any of its officers made a decision that could have triggered coverage.

naked assertions devoid of further factual enhancement" (cleaned up)).  Spirit does not, for

example, allege that its employees became infected while at work or were in its headquarters

while infectious, and does not state which of its other properties in other states have experienced

the confirmed presence of COVID-19.  *See, e.g.*, *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*,

No. 20-CV-10167 (SDW) (LDW), 2021 WL 1904739, at *4 n.10 (D.N.J. May 12, 2021)

(holding that it was not sufficient for the plaintiff to allege that "scores of people passed through

[its] stores, some of them spreading COVID-19 as they went"); *see also, e.g.*, *Dakota Girls, LLC*

*v. Philadelphia Indem. Ins. Co.*, 524 F. Supp. 3d 762, 774 (S.D. Ohio 2021) (holding that it was

not sufficient for plaintiffs to allege only that "individuals on their premises exhibited symptoms

'consistent with COVID-19'").

Second, many of the government orders Spirit relies on did not "limit[], restrict[], or

prohibit[]" *access* to its properties.  Spirit provides no details with respect to government orders

in New Mexico — the one and only state where it specifically alleges that there was confirmed,

as opposed to likely, presence of COVID-19 on its properties.  Compl. ¶ 45.  As for the

government orders in other states, although Spirit alleges that some of its properties were

required to close to the public, Compl. ¶ 25, as to others, there was only a "curtailment of

operations," *id.*, which is not sufficient to trigger Spirit's coverage.  *Cf. Northwell Health, Inc*.,

2021 WL 3139991, at *8 (holding that a similar Communicable Disease provision was not

triggered because New York's COVID-19 orders did not "prohibit access" to the property);

*Abbey Hotel Acquisition, LLC v. Nat'l Sur. Corp.*, No. 21-CV-3506 (VEC), 2021 WL 4522950,

at *3 (S.D.N.Y. Oct. 1, 2021) (holding that a Communicable Disease Event provision was not

triggered where government orders did not "require[ the hotel] to evacuate, decontaminate, or

disinfect their facilities . . . they were ordered only not to accept any new reservations or to

extend existing ones").  Notably, some of the orders at issue regulated the public and placed no restrictions on Spirit at all.  *See* Compl. ¶ 33 ("By requiring individuals who did not participate in essential services to refrain from in-person contact with other persons, the Texas order effectively imposed closure and cessation of operations involving inter-personal interaction of all business not deemed essential services.").

Finally, and in any event, Spirit does not plausibly allege that *any* of its properties were required to close because of the "actual not suspected" presence of COVID-19 at the property itself, as the Communicable Disease provisions require.  The Complaint states that the government orders that caused Spirit's losses "mandated closure to the public or curtailment of operations of certain businesses *deemed 'non-essential' or aspects of businesses deemed non-essential*."  Compl. ¶ 25 (emphasis added).  The orders, that is, were based on whether a business was "essential," *not* on whether there was confirmed presence of COVID-19 at the business.  Put another away, Spirit's properties would have been affected by the orders whether or not any COVID-19 had been confirmed at its locations; the orders, therefore, were not "regulating the actual not suspected presence of communicable disease," as required to trigger coverage under the Policy.  *See, e.g.*, *Blue Coral, LLC v. W. Bend Mut. Ins. Co.*, No. 20-CV-00496, 2021 WL 1395771, at *4 (E.D.N.C. Apr. 13, 2021) (rejecting coverage because the government order did not "state that COVID-19 was present at any specific place or that it was issued due to the presence of COVID-19 at any specific place"); *Dakota Girls, LLC*, 524 F. Supp. 3d at 774 ("These provisions contemplate an outbreak of communicable disease on the insured's premises, not an outbreak affecting the public at large.").

In arguing otherwise, Spirit cites a trio of out-of-Circuit decisions holding that plaintiffs had sufficiently pleaded coverage for COVID-19 losses under comparable Communicable

Disease insurance provisions.  Pl. Mem. 18.  But two of these decisions are easily distinguished because the insurance provisions at issue did not require a government order regulating the actual presence of disease at the insured location.  *See Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, No. 21-CV-00011, 2021 WL 1851030, at *1 n.1 (E.D. Tex. May 5, 2021); *Baldwin Acad., Inc. v. Markel Ins. Co.*, No. 20-CV-02004 (AGS), 2020 WL 7488945, at *3 (S.D. Cal. Dec. 21, 2020).  The third, *Treo Salon, Inc. v. W. Bend Mut. Ins. Co.*, No. 20-CV-1155 (SPM), 2021 WL 1854568 (S.D. Ill. May 10, 2021), is arguably distinguishable as well because the policy language at issue there, unlike the Policy here, did not include the phrase "actual not suspected presence of communicable disease," *see id.* at *1.  To the extent *Treo* is not distinguishable, the Court declines to follow it, as it holds that the plaintiff at issue had stated a plausible claim based on little more than a rhetorical question: "How can [the insurer] or anyone else be so certain that COVID-19 was not on [the plaintiff's] premises?"  *Id.* at *6.  Under the plain language of the Policy, it is not enough for Spirit to cite a government order limiting, restricting, or prohibiting access to its properties base on the possible, or even suspected, presence of COVID-19; an order based on the actual presence of COVID-19, absent here, is required.

## CONCLUSION

For the forgoing reasons, Westport's motion to dismiss is GRANTED, and Spirit's Complaint is dismissed in its entirety.[7]  Moreover, the Court declines to grant Spirit's request for leave to amend.  Pl.'s Mem. 25.  Although leave to amend a complaint should be freely given

---

[7]     Westport makes a forceful argument that Spirit's claim is independently barred by the Policy's "Contaminants" exclusion, which applies to "[l]oss or damage due to the discharge, dispersal, seepage, migration, release or escape of contaminants," *id.* at 54, including "virus[es]," *id.* at 69.  *See* Def.'s Mem. 18-21; *see also, e.g.*, *Northwell Health, Inc*., 2021 WL 3139991, at *9 (holding that a nearly identical provision barred losses arising from COVID-19).  In light of the Court's conclusion, however, it need not and does not address that issue, let alone the other exclusions Westport invokes.

"when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted).  Here, the problems with Spirit's claims are substantive, so amendment would be futile.  *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases).  Moreover, Spirit does not suggest that it is in possession of facts that would cure the problems with its claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  Finally, the Court granted Spirit leave to amend its original complaint in response to Westport's motion to dismiss and explicitly warned that it would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  ECF No. 22; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)).

The Clerk of Court is directed to terminate ECF No. 17, to enter judgment for Defendant consistent with this Opinion and Order, and to close the case.

SO ORDERED.

Dated: October 21, 2021
New York, New York

_____
JESSE M. FURMAN
United States District Judge